ORDERED.

Dated:  September 30, 2019

Michael G. Williamson
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                          Case No. 8:11-bk-14531-MGW
                                                                Chapter 13
Deborah Claire McGregor,

      Debtor.
_____/

Deborah Claire McGregor,                                        Adv. No. 8:16-ap-00758-MGW

      Plaintiff,

v.

Bruce McGregor,

      Defendant.
_____/

## ORDER AND MEMORANDUM OPINION DENYING
## PLAINTIFF'S MOTION FOR RECONSIDERATION

If what transpired here wasn't so unfortunate, this case would be a comedy of

errors. Start with the fact that the Debtor's ex-husband and his lawyers didn't realize

the Debtor was able to discharge her marital debt obligations in this chapter 13 case,

leading the Debtor's ex-husband to violate the automatic stay by trying to set off $30,000 of the Debtor's (dischargeable) unpaid marital debt obligations against his future alimony obligations. Making matters worse, the Debtor, rather than coming to this Court to stop her ex-husband's efforts, basically spent more than $45,000 to pay lawyers to stop her ex-husband from obtaining a $30,000 judgment, which would have been void anyway because it was obtained in violation of the automatic stay.

Although this Court ruled that the ex-husband's efforts to modify his alimony obligations violated the stay, the Court awarded the Debtor only $6,291.75 in damages—rather than the $70,000 or so she sought—because she failed to mitigate her damages by coming to this Court first. Had she done so, the Debtor could have avoided all but the $6,291.75 in damages the Court awarded her. The Debtor now contends the Court's finding that she failed to mitigate her damages was a clear error of law or fact because the evidence at trial showed she insisted her bankruptcy lawyer come to this Court to stop her ex-husband's efforts but that her lawyer refused to do so.

Even assuming that's true, the Supreme Court has long recognized that clients must be held accountable for the acts and omissions of their lawyers. Because the Debtor is held accountable for her lawyer's inactions, the fact that her lawyer may have been responsible for the Debtor's failure to mitigate her damages is not a basis for reconsidering the Court's final judgment.

2

## Background

After more than twenty-five years of marriage, Deborah McGregor and Bruce McGregor divorced in 2010.[1] Under the final judgment of divorce, Bruce was obligated to pay Deborah $5,000 per month in permanent alimony.[2] The divorce judgment also obligated Bruce to pay 66% of the couple's $180,000 or so in credit card and student loan debt; Deborah was liable for the remaining 34% (or $62,000).[3]

Eighteen months after the parties' divorce was final, Deborah filed for chapter 13 bankruptcy. In her bankruptcy petition, Deborah listed Bruce on Schedule F as holding an unsecured claim in an unknown amount.[4] Bruce received notice of the bankruptcy case and ultimately filed an $11,195.39 proof of claim for Deborah's share of the marital debt that he had paid up to that point.[5] On January 13, 2012, the Court confirmed Deborah's proposed chapter 13 plan.[6] Under Deborah's confirmed plan, Bruce would share pro rata in a $3,689 distribution to unsecured creditors (Bruce's share came to a little more than $600).[7]

---

[1] Adv. Doc. No. 44, ¶ 1. Customarily, the Court refers to parties by their surnames. Because the parties here share the same surname, the Court will refer to the parties by their first names.

[2] Pl.'s Ex. 1 at ¶¶ 1 – 2, Adv. Doc. No. 47-1.

[3] *Id.* at ¶¶ 21 – 22.

[4] Pl.'s Ex. 13, Adv. Doc. No. 47-13.

[5] Pl.'s Exs. 14 & 15, Adv. Doc. No. 47-14 & 47-15.

[6] Pl.'s Ex. 16, Adv. Doc. No. 47-16.

[7] *Id.*; see also Doc. No. 39.

Ordinarily, the confirmation order would have ended things between the couple, even if unsatisfactorily. But Bruce, presumably unhappy with being stuck with Deborah's share of the marital debt, went back to the divorce court in New Jersey and asked the court to modify his alimony obligations going forward and to award him a credit for Deborah's share of the marital debt that he had already paid (which was close to $20,000 by that point).[8]

Bruce's efforts to modify his alimony obligations violated the automatic stay. To be sure, efforts to modify a domestic support obligation are generally excepted from the automatic stay.[9] But when, like in this case, a former spouse seeks to modify a domestic support obligation based solely on a debtor's failure to pay a dischargeable debt, the request for a modification constitutes a setoff in violation of Bankruptcy Code § 362(a)(7).[10] This is particularly true when, like here, the party seeks a dollar-for-dollar adjustment based on the amount of the dischargeable debt.[11]

Although it's doubtful Deborah understood the intricacies of § 362(b)(2)(A)(ii) and § 362(a)(7), she credibly claims that she believed Bruce's conduct violated the automatic stay. And based on that belief, she apparently asked her bankruptcy lawyer to stop Bruce's efforts. As Deborah tells it, her bankruptcy lawyer responded that he

---

[8] Pl.'s Ex. 2, Adv. Doc. No. 47-2.

[9] 11 U.S.C. § 362(b)(2)(A)(ii).

[10] *Foster v. Burns (In re Foster)*, 574 B.R. 19, 27 - 28 (Bankr. D. Maine 2017).

[11] *Id.* at 28.

needed to look into it because, in his view, Bruce's efforts fell within a "gray area." When her bankruptcy lawyer didn't get back to her, Deborah says she went to the chapter 13 trustee, who advised her that he couldn't give legal advice but suggested to her that she sit in her bankruptcy lawyer's office and wait for him.

Rather than press the issue and file something with this Court, Deborah instead told her New Jersey divorce lawyer, whom Deborah claims raised Deborah's bankruptcy with the New Jersey divorce court. There are no filings from Deborah's divorce lawyer in the record. But in response to Bruce's initial request to modify his alimony obligations, the divorce court did order the parties to brief what effect Deborah's bankruptcy case had on Bruce's alimony obligation and the former couple's marital debt.[12]

Whatever doubts the divorce court had about the effect of Deborah's chapter 13 case, if any, apparently were allayed by the brief that Bruce's divorce lawyer submitted in January 2013, which argued (erroneously as it turns out) that Deborah's marital debt obligations were nondischargeable under Bankruptcy Code § 523(a)(15).[13] Three months after that brief was filed, the state court concluded that Deborah's obligation to pay 34% of the marital debt was not discharged by her

---

[12] Adv. Doc. No. 44-1, Ex. G. Shortly after the Court's request, Deborah's bankruptcy lawyer wrote to her divorce lawyer to notify the divorce lawyer that Deborah had, in fact, filed for bankruptcy and that Bruce had notice of and an opportunity to participate in Deborah's bankruptcy case. Pl.'s Ex. 23, Adv. Doc. No. 47-23.

[13] Pl.'s Ex. 6, at p. 14, l. 18 – p. 15, l. 20, Adv. Doc. No. 47-6.

bankruptcy.[14] Then, in September 2013, the divorce court entered a $30,401.26 judgment in Bruce's favor for Deborah's share of the marital debt that he had paid.[15]

It wasn't until a year later, at a hearing on Bruce's request to use the cash surrender value of Deborah's life insurance policy to satisfy the $30,401.26 judgment, that the divorce court (now presided over by a new judge) realized Bruce's collection efforts had, in fact, violated the automatic stay.[16] At an October 2014 hearing, New Jersey Superior Court Judge Daniel J. Yablonsky explained that Bankruptcy Code § 523(a)(15), which provides for the discharge of a debt arising under a marital settlement or divorce decree (other than a debt for a domestic support obligation), doesn't apply in chapter 13 cases.[17]

So Deborah's marital debt obligations were, in fact, dischargeable under Bankruptcy Code § 1328. And by trying to recoup Deborah's share of the marital debt through a modification of his alimony obligations, Bruce was effectively trying to convert a dischargeable debt into a nondischargeable one.[18] For the reasons explained above, that ran afoul of the automatic stay.[19]

---

[14] Adv. Doc. No. 44-1, Ex. I.

[15] Adv. Doc. No. 44-1, Ex. K.

[16] Pl.'s Ex. 6 at p. 10, l. 11 – p. 17, l. 14, Adv. Doc. No. 47-6.

[17] *Id.* at p. 16, l. 8 – p. 17, l. 2.

[18] *Id.* at p. 18, l. 11 – p. 19, l. 25.

[19] *Id.*

Although Judge Yablonsky volunteered that Bruce's actions could warrant sanctions, he declined to impose any because he thought that was something better left for this Court:

> I mentioned to you that I thought that that would arguably be a violation of the automatic stay that might arguably entitle you to – to sanctions. But I don't think that that's something that I ought to be looking at. I think that's something that the Court who's sensitive to those needs, which is the Bankruptcy Court down in Florida, that that's the Court that ought to consider those issues.[20]

Deborah heeded Judge Yablonsky's suggestion and sought sanctions in this Court, though she waited two years to do so.

In October 2016, Deborah filed this proceeding seeking to recover sanctions against Bruce for violating the automatic stay.[21] On summary judgment, the Court concluded, largely for the reasons explained above, that Bruce's actions violated the automatic stay as a matter of law.[22] At the trial on damages, Deborah put on evidence that she had suffered more than $70,000 in damages resulting from Bruce's efforts to modify his alimony obligations.[23]

Nearly half those damages were for legal fees she incurred in New Jersey. In particular, Deborah paid her New Jersey divorce lawyers more than $33,000 for their

---

[20] *Id.* at p. 29, ll. 6 – 14. In fact, bankruptcy courts have exclusive jurisdiction to impose sanctions for stay violations. *In re Lickman*, 297 B.R. 162, 187 – 188 (M.D. Fla. 2003).

[21] Adv. Doc. No. 1.

[22] Adv. Doc. No. 52.

[23] Adv. Doc. Nos. 64 & 67.

services opposing Bruce's modification efforts. She also incurred $12,000 in taxes when she withdrew retirement funds to pay her legal fees. The remainder of her damages primarily consisted of medical expenses for medical problems that Deborah says were caused by the stress of the New Jersey litigation.

After considering the evidence at trial, the Court concluded that Deborah failed to mitigate her damages by not coming to this Court immediately once Bruce tried to modify his alimony obligations. Had she done so, Deborah could have avoided 90% of her damages. Ultimately, the Court awarded Deborah $6,291.75 in damages for the amounts she would have incurred had she immediately notified this Court of Bruce's stay violation:

- $2,500 to prosecute a motion for sanctions in this Court;

- $1,500 to file a suggestion of bankruptcy in New Jersey and otherwise notify the New Jersey divorce court of her efforts here to halt Bruce's conduct;

- $1,333 in taxes as a penalty for withdrawing the $4,000 in fees it would have cost her; and

- $958.75 for the mediation that occurred in this case.

Deborah now asks this Court to reconsider its ruling.[24] As Deborah understands it, the Court's ruling was premised on her failure to immediately notify this Court of Bruce's stay violation.[25] Because, in her view, the evidence shows that

---

[24] Adv. Doc. No. 71.

[25] *Id.*

she "did everything possible to stop the carnage brought on by the defendant, Bruce McGregor with his costly illegal motions," Deborah asks the Court to award her all the damages she alleges she incurred.[26]

## Conclusions of Law

A party seeking reconsideration of a prior order is held to a high standard: The party seeking reconsideration must demonstrate that (i) controlling law has changed; (ii) newly discovered evidence would merit a different result; or (iii) reconsideration is necessary to correct a clear error of law or fact or to prevent a manifest injustice.[27] The only plausible basis for reconsideration here would be if the Court made a clear error of law or fact.

The Court is comfortable it did not make a clear error of law. Courts around the country, including bankruptcy courts in this district, have recognized that debtors have a duty to mitigate damages resulting from a stay violation.[28] "Although the Bankruptcy Code does not require a debtor to warn his creditors of existing violations prior to moving for sanctions, the debtor is under a duty to exercise due diligence in protecting and pursuing his rights and in mitigating his damages with

---

[26] *Id.*

[27] *In re Fundamental Long Term Care, Inc.*, 493 B.R. 620, 624 (M.D. Fla. 2013).

[28] *See, e.g., Fravala v. E Holdings, Ltd. (In re Fravala)*, 2017 WL 3447936, at *4 (Bankr. M.D. Fla. Aug. 10, 2017) (explaining that a "debtor claiming an injury under § 362(k), however, 'has a duty to mitigate damages that may occur as a result of a stay violation'"); *In re Yantis*, 553 B.R. 351, 355 (Bankr. N.D. Ind. 2016 (explaining that debtors "faced with violations of the stay have a duty to mitigate their damages"); *In re Rosa*, 319 B.R. 1, 9 (Bankr. D. Mass. 2004) (explaining that "[d]ebtors are indeed under a duty to mitigate their damages from automatic stay violations").

regard to such violations."[29] Before imposing sanctions, there is little doubt that this Court must determine whether a debtor exercised due diligence in protecting her rights.[30] In fact, Deborah does not appear to challenge the Court's ruling that she was required to mitigate her damages.

Instead, Deborah essentially contends that the Court made a clear error of fact when it concluded that she failed to do so. In her reconsideration motion, Deborah appears particularly concerned that the Court overlooked her efforts to mitigate her damages because they were not detailed in her counsel's post-trial memorandum.[31] In her motion, Deborah notes that as soon as Bruce moved to modify his alimony in New Jersey, she went to see her bankruptcy lawyer, who drug his feet and never got back to her.

According to Deborah, when her bankruptcy lawyer refused to act, she went to see the chapter 13 trustee, who (because he cannot give debtors legal advice) suggested that the Debtor plant herself in her bankruptcy lawyer's office. There's no evidence in the record that Deborah did anything at that point to insist her bankruptcy lawyer take some action to stop Bruce's efforts.[32]

---

[29] *Clayton v. King (In re Clayton)*, 235 B.R. 801, 811 – 12 (Bankr. M.D.N.C. 1998).

[30] *In re Fravala*, 2017 WL 3447936, at *5 (citing *In re Biehl*, 2017 WL 1040941, at *4 (Bankr. C.D. Cal. Mar. 13, 2017)).

[31] Adv. Doc. No. 71 ("I was not provided [counsel's] response to the court until AFTER the trial, giving me no opportunity to approve/edit her response as I requested.")

[32] At trial, Deborah testified that, at some point, she sought advice from other lawyers, who, according to Deborah, refused to take her case because she already had a lawyer. But it's unclear when she consulted these other lawyers. Considering all the evidence at trial, it appears Deborah

For instance, Deborah didn't offer into evidence any emails or letters between her and her bankruptcy lawyer in which she insisted that her bankruptcy lawyer take any action. Nor did she put her bankruptcy lawyer, whom she could have subpoenaed, on the witness stand to testify that Deborah repeatedly insisted that he take some action but that he (for whatever reason) refused to do so. But, and this is an important point, even if Deborah had put on evidence that she did everything humanly possible to get her bankruptcy lawyer to take some action in this Court and her lawyer (despite those efforts) refused, the outcome would still be the same.

The United States Supreme Court has held, in a variety of contexts, that "clients must be accountable for the acts and omissions of their attorneys."[33] This is true even when a lawyer's "unexcused conduct imposes an unjust penalty on the client."[34] The Supreme Court, for example, has upheld the dismissal of a lawsuit that resulted from a lawyer's failure to attend a pretrial conference.[35] The Supreme Court has also held that a client could be penalized for his lawyer's failure to timely file a tax return.[36]

---

consulted other lawyers after the October 2014 hearing at which Judge Yablonsky suggested Deborah could seek sanctions from this Court—not when Bruce first moved to modify his alimony.

[33] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. LP*, 507 U.S. 380, 396 (1993).

[34] *Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962).

[35] *Id.*

[36] *United States v. Boyle*, 469 U.S. 241, 249 – 51 (1985).

While this rule may produce harsh results at times, it is necessary to give effect to our system of representative litigation:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent. . . .[37]

That rule, enunciated by the Supreme Court, applies with equal force here.

For whatever reason—either because Deborah did not insist that her bankruptcy lawyer take action or because she did and her lawyer to do so—Deborah chose to rely on her New Jersey divorce counsel to raise the issue of her bankruptcy. And when the divorce court did not initially quash Bruce's efforts, Deborah chose to continue litigating the issue. The end result is that not only did Deborah not mitigate her damages, she exacerbated them.

When Bruce first moved to modify his alimony to recoup Deborah's share of the marital debt that he had paid, he was only seeking to recoup $20,000 (though the amount later increased to $30,000). Yet, Deborah chose to incur $33,000 in attorney's fees (plus $12,000 in penalties to withdraw funds to pay her attorney's fees)—all to avoid a judgment that would be void because it was obtained in violation of the stay.

---

[37] *Pioneer Inv. Servs. Co.*, 507 U.S. at 396

**Conclusion**

There is no question that Deborah's decision to continue litigating in New Jersey divorce court exacerbated her damages. Deborah lays that decision at the feet of her bankruptcy lawyer, who, according to Deborah, refused to act in this case. Assuming that's true, Deborah chose her bankruptcy lawyer as her representative in this case, and she cannot now avoid the consequences of his actions or inactions. Accordingly, it is

**ORDERED** that Deborah's motion for reconsideration is DENIED.

Attorney David E. Hicks is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the Order.